Nathan B. KOGAN, as Trustee in Bankruptcy of Minute Approved Credit Plan, Inc., Plaintiff,

v.

NATIONAL BANK OF NORTH AMERICA, Defendant.

No. 75 Civ. 80.

United States District Court,
E. D. New York.

Oct. 23, 1975.

Nathan B. Fogelson, New York City, for plaintiff.

Cole & Deitz, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant, National Bank of North America ("NBNA" or the "Bank"), has moved to dismiss the complaint pursuant to Rules 9(b), 12(b) and (6) and 56(b) of the Federal Rules of Civil Procedure, on the grounds that the complaint fails to state a claim upon which relief can be granted; more particularly, that Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), are not applicable; that Sections 67(d) and 70(e) of the Bankruptcy Act, 11 U.S.C. §§ 107(d) and 110(e), are also inapplicable; and that as such the Court lacks jurisdiction to entertain plaintiff's claim for negligence and that the Court lacks subject matter jurisdiction.

### Facts

On June 9, 1972, Minute Approved Credit Plan, Inc. ("Minute") made and effected a public offering of approximately 100,000 shares of its common stock (Complaint Para. 4). At or about the same time Lawrence Goral and Anthony Greco entered into a scheme with certain officers and directors of Minute

to loot the company by misappropriating its assets (Complaint Para. 5).

On July 18, 1972, NBNA issued to Joseph Lichtman, Minute's President, two cashier's checks, aggregating $90,-000., payable to the order of Minute. Lichtman endorsed the checks on behalf of the corporation, making one payable to Anthony Greco and the other to Lawrence Goral. The checks were then deposited in the endorsee's respective accounts at another bank, forwarded to NBNA for collection and duly paid by the Bank. (Complaint Paras. 7 and 8.)

An involuntary petition in bankruptcy was filed against Minute in January 1973 and it was adjudicated a bankrupt in March 1973.

The instant action is an attempt by the Trustee in Bankruptcy ("Trustee") to recover $90,000 from NBNA on the ground that the two transactions on July 18, 1972 violated the anti-fraud provisions of the federal securities laws and Section 67(d) of the Bankruptcy Act. For the purposes of this motion the Court must accept as true the allegations in the complaint.

On April 11, 1975, subsequent to the commencement of this action, an indictment was filed in the United States District Court for the Southern District of New York naming the aforesaid individuals and officers and directors of Minute as defendants, charging them with conspiracy and securities fraud. NBNA was not named or implicated in any way as a defendant in that indictment.

### Federal Securities Laws

Count I of the Trustee's complaint alleges essentially that the issuance of the two checks on July 18, 1972 were in violation of Rule 10b–5, an SEC rule promulgated under Section 10(b) of the Securities Exchange Act of 1934, and Section 17(a) of the Securities Act of 1933. However, there is no allegation that the Bank was a participant in the scheme or conspiracy to loot the corporate assets or that the Bank was in possession of the $90,000 or in any way benefited from the challenged transactions.

Rule 10b–5 provides that it is unlawful to defraud or misrepresent ". . . in connection with the purchase or sale of any security." The phrase "in connection with" has been construed to mean that the fraud practiced must have been prior to or contemporaneous with the sale of securities. *Pepsico, Inc. v. W. R. Grace & Co.*, 307 F.Supp. 713, 720 (S.D.N.Y.1960). See also *Fuller v. E. I. duPont, Glore, Forgan & Company*, 54 F.R.D. 557 (W.D.Mo. 1971); *Seward v. Hammond*, 8 F.R.D. 457 (D.Mass.1948). Although this is a point of first impression for this Court, there appears to be no reason to depart from the position enunciated in the Southern District of New York and other Districts to the effect that frauds occurring subsequent to the sale are not actionable under Rule 10b–5.

The complaint sets forth that the sale was approved by Minute and effected on June 9, 1972 and, further, that the conspiracy to misappropriate corporate assets was entered into at about the same time. It also charged that the Bank issued two cashier's checks in July 1972; subsequent documents established those checks were drawn on July 18th. The first possible connection of the Bank to the sale of Minute's stock occurred more than five weeks after the alleged fraud. The complaint and supporting affidavits fail to connect the Bank to the sale at the requisite point in time.

Section 17(a) of the Securities Act of 1933 is even narrower than Rule 10b–5 in that the fraud must actually be in the offer or sale itself, rather than in connection thereto. The complaint in no way connects the Bank to the actual sale of Minute's stock. .

Having failed properly to connect the Bank to the securities fraud, there is no need to pass upon defendant's contention that pursuant to Rule 9(b) of the Federal Rules of Civil Procedure the

Trustee did not allege the fraud with sufficient specificity, (although it appears that the Trustee did not.) Nor is it necessary for this Court to express an opinion regarding defendant's argument that the Trustee lacks standing to challenge the Bank's actions under Rule 10b–5.

### Bankruptcy Laws

■ Count II of the Trustee's complaint alleges that the issuance of the two cashier's checks in July 1972 were fraudulent transfers under Section 67 (d) and 70(e) of the Bankruptcy Laws. Since the transaction in question occurred within one year of the filing of the petition in bankruptcy, the Trustee must rely on the definitions of fraudulent transfers found in Section 67(d)(2). Four possible fraudulent transfers are defined in that Section; the first three entail transfers for less than full consideration and the fourth requires that the transferor had the intent to hinder, delay, or defraud creditors. The Trustee makes no allegation that Minute received less than full consideration and must, therefore, be resorting to the fourth definition.

The fraudulent transfer provisions of the Bankruptcy Act were designed to permit recovery to the estate of the bankrupt of that property which was wrongfully distributed. Recovered property would then be available to all creditors rather than to only one creditor in preference to the others.

When Minute deposited its funds in the Bank, there was no transfer, fraudulent or otherwise, within the meaning of the bankruptcy laws, because the funds remained wholly within the estate of the corporation and were available for the satisfaction of its creditors. When the checks were issued, it was Minute, not the Bank, who was transferring its funds and the transfer was not to the Bank but rather to parties unnamed in this suit. The Bank, then, was not the transferee but rather a mere depository or, at most, an agent of the payor. *Field v. Lew*, 184 F.Supp. 23 (E.D.N.Y.1960), *aff'd sub nom.*, *Field v. Bankers Trust Company*, 296 F.2d 109 (2d Cir. 1961); *Wilds v. Lebanon National Bank*, 219 App.Div. 597, 220 N.Y. S. 480 (1st Dep't), *aff'd* 245 N.Y. 629, 157 N.E. 886, *cert. denied*, 275 U.S. 568, 48 S.Ct. 141, 72 L.Ed. 430 (1927). Therefore, the Trustee has failed to demonstrate how the Bank violated the bankruptcy laws.

### Count III

■ Count III of the Trustee's complaint alleges that the Bank issued the two cashier's checks in violation of the corporate resolution on file with the Bank, authorizing various individuals to perform banking transactions on behalf of Minute and, additionally, the Bank acted negligently in issuing said checks. Specifically, as set forth in Count II and repeated in Count III, the Trustee contends that the resolution required that all checks paid to the order of the corporation *must* be deposited in the corporate account in NBNA. This Count, essentially a common law negligence claim, can be entertained in federal court only through the doctrine of pendent jurisdiction; once a cause of action is made out which gives rise to federal jurisdiction, a court may hear the pendent claim arising out of the same set of operative facts.

In the instant case the Trustee has failed to state a claim upon which relief could be granted either under the federal securities or bankruptcy laws and, therefore, the negligence count, based on pendent jurisdiction, must be dismissed.

It follows from the preceding discussion that defendant's motion to dismiss must be granted.

So ordered.